UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| _____ )<br>VICTORIA MOORE, )<br>Plaintiff/Petitioner, )<br> )<br>v. )<br> )<br>DANIEL MOORE, )<br>Defendant/Respondent )<br> )<br>_____)<br> )<br>DANIEL MOORE, )<br>Counter-Petitioner, )<br> )<br>v. )<br> )<br>VICTORIA MOORE, )<br>DAVID ANGELO, AND )<br>MICHELLE ANGELO, )<br>Counter-Respondents )<br> )<br>_____) | Case No. 2:23-cv-00161-cr |

**ANSWER AND COUNTER-PETITION**

Defendant/Respondent Daniel Moore ("Respondent") files this Answer and Counter-Petition in response to the Petition/Complaint (Doc. 1) filed by Petitioner/Plaintiff Victoria Moore ("Petitioner"). The Counter-Petition is filed against Petitioner, along with David Angelo and Michelle Angelo ("Counter-Respondents"), who are Petitioner's parents and who provided

1

material assistance and financial support, including but not limited to housing in the United States, for the removal of the minor child from her home in Zimbabwe to New York and Vermont.

## INTRODUCTION

Respondent seeks the assistance of this Court in facilitating the return of his minor daughter, L.M. (DOB 2019).  Respondent has not seen his daughter in person since December 2021, when Petitioner absconded with her from Zimbabwe to the United States.  Upon leaving Zimbabwe, Petitioner moved in with her parents, Counter-Respondents, in New York for a period of time, until she relocated to Vermont.  The home where she lived or lives in West Dover, Vermont, is a second home owned by her parents.  *See* Exhibit 5 (referring to Petitioner's West Dover address as her parents' vacation home).

An immediate remedy is needed.  To date, Respondent has sought relief from the Zimbabwe judicial system and the Vermont judicial system, with limited progress to date. Respondent therefore submits this Counter-Petition and Answer to this Court under The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention")[1], and the International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq. ("ICARA").

Respondent filed for custody/divorce in Zimbabwe in April 2022.  In June 2022, Petitioner filed for custody/divorce in Vermont, after she had resided in Vermont for less than six months. The Vermont Superior Court has erroneously issued a series of temporary custody rulings despite

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10493 (1986).

lacking subject matter jurisdiction (because proper jurisdiction was in Zimbabwe).  In or about October 2022, Respondent filed an initial application in Zimbabwe under the Hague Convention for the return of L.M.  In April 2023, the United States Department of State received notice of that pending application and notified the Vermont Superior Court, which erroneously stayed the matter filed by Petitioner, despite a pending motion to dismiss for lack of jurisdiction.  It does not appear that the Zimbabwe authorities have made any substantial progress on addressing the petition under the Hague Convention filed by Respondent in Zimbabwe.

Respondent now files this Answer and Counter-Petition, seeking the return of L.M. to Zimbabwe under the Hague Convention, access to L.M. as her parent, and other remedies as authorized by law.

## COUNTER-PETITION

1. This Counter-Petition is filed as a result of the wrongful removal of the parties' daughter, L.M., from her habitual residence in Zimbabwe to the United States.  The wrongful removal occurred in or about December 2021, although Petitioner continued to make false promises of return for a period of time thereafter, through approximately January 2022.

2. This Counter-Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention"), and the International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq. ("ICARA").

3. The Hague Convention came into effect in the United States on July 1, 1988, and was ratified between the United States and Zimbabwe on August 1, 1995.

4. The goals of the Hague Convention are: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any contracting state, and (2) to ensure that rights of custody and of access under the law of one contracting state are effectively respected in another contracting state. *See* Hague Convention, Art. I.

5. Respondent filed a petition in Zimbabwe for return of L.M. under the Hague Convention in or about October 2022 (the "Zimbabwe Petition"). The Zimbabwe Petition that was initially submitted in October 2022 is attached here as Exhibit 1. Respondent's affidavit in support of the Zimbabwe Petition is attached here as Exhibit 2 ("Respondent's Aff."). Respondent's counsel's affidavit in support of the Zimbabwe Petition is attached here as Exhibit 3 ("Counsel Aff."). The Index of exhibits to the Respondent's Affidavit, and those exhibits, are attached here as Exhibit 4. Respondent filed a further document with the U.S. Department of State for the return of L.M. in or about May 2023, which is attached here as Exhibit 5.

**JURISDICTION**

6. This Court has jurisdiction under ICARA, 22 U.S.C. § 9003 because this case involves the removal of a child under the age of 16 to the United States from her habitual residence in Zimbabwe. The child is currently located within the jurisdiction of this Court in the District of Vermont.

7. Petitioner resides in Vermont.

8. Respondent resides in Zimbabwe.

9. Counter-Respondents reside in Huntington, New York, and, upon information and belief, own real property in Vermont.  Further, they provided material and financial assistance to the removal of L.M. from Zimbabwe to the United States in violation of international law.

## FACTS

10. The parties were married in Zimbabwe in December 2018.  In May 2019, they had a daughter, L.M.  They lived together until approximately October 2021 when the parties separated.  (Exhibit 2, Respondent's Aff. ¶ 5-8.)

11. After separating, the parties shared joint custody of L.M.  (Respondent's Aff. ¶ 8.)  Under that arrangement, they alternated 2 to 3 nights with L.M. in their respective homes.  During his parenting time, Respondent would arrange all meals and food at meal times, he took her to school and brought her home, took her to play dates, and generally ensured that all of her needs were met.  (*Id.*)  During that period, there was a time when Petitioner went on holiday for a week and Respondent cared for L.M. for that entire period.

12. In December 2021, Petitioner informed Respondent that she intended to take L.M. to the United States for the Christmas holiday.  (*Id.* ¶ 9.)  Respondent did not consent to this travel because he wished to spend the Christmas holiday with L.M. in Zimbabwe and for Petitioner to take L.M. to the United States for a visit after Christmas.  (*Id.* ¶ 12.)

13. On December 18, 2021, Petitioner called Respondent to inform him that she had boarded a plane with L.M. and that they were flying to New York.  (*Id*. ¶ 12.)  This removal was done without prior notice, knowledge, or consent by Respondent.  (*Id*. ¶ 14.)

14. At that time, Petitioner indicated that she intended to return to Zimbabwe with L.M. after a few weeks.  (*Id*. ¶ 15.)

15. On or about December 18, 2021, Petitioner wrote: "Regardless we are returning in January and you of course will see her in February when you are back. . . . [L.M.] loves you and I will never stop that or take you from her."  (Exhibit 4, p. 22-23.)

16. At the time that Petitioner absconded with L.M. from Zimbabwe, the parties had been exercising joint custody of L.M.

17. From December 18, 2021 through January 2022, Petitioner resided at her parents' home in Huntington, New York.

18. In late January 2022, Petitioner told Respondent that she would not be returning to Zimbabwe with L.M.  (Respondent's Aff. ¶ 18; *see also* Exhibit 4, p. 24.)  On or about January 27, 2022, Petitioner wrote: "I have made the decision to permanently move back to New York."  (*Id*. ¶ 18.)

19. In that same message, Petitioner acknowledged their joint custody of L.M.  She wrote: "You are welcome to come see [L.M.] in New York.  However, I do not feel safe nor comfortable travelling to Zimbabwe without knowing the official arrangement of my daughter."  (Exhibit 4, p. 24.)

20. Subsequently, Petitioner refused to allow telephone or videochat access by Respondent to his daughter.  (*See id.* ¶ 22.)

21. At some point between January 2022 and March 2022, Petitioner moved with L.M. to her parents' vacation home in West Dover, Vermont.  She remained there for an unknown period of time and may still be residing at that home.

22. Accordingly, Counter-Respondents provided material support and financial resources to Petitioner's efforts to abscond with L.M. by providing housing and other support in both New York and Vermont.

23. Responsibility for the wrongful removal of a child is not limited to the parent of that child, and other close relatives who participated in the removal and concealment may be held responsible.

24. Counter-Respondents materially assisted in the removal and concealment of L.M. from Zimbabwe by providing logistical and financial support, including but not limited to housing in Vermont and New York.

25. Petitioner repeatedly demanded additional child support from Respondent, and when he was unable to pay the significant sums she demanded, she began blocking Respondent's access to L.M.  On March 16, 2022, Respondent wrote: "I will consistently pay what is affordable due to my earning capacity.  I earn an inconsistent amount of money and I earn an African salary. These are not viable amounts for me to send to you every month based on what I earn. . . . Please in the meantime could you return Libby to the country of her birth [.]"  (Exhibit 4, p. 26.)  Petitioner responded: "Hahahahahahah."  (*Id.*)  Two days

later, Respondent wrote: "Please unblock me so I can speak with [L.M.]."  (*Id.*) Nevertheless, Respondent continued to provide financial support for L.M., in amount in excess of $16,000 USD since December 2021.  (Ex. 2, Respondent's Aff., ¶ 28.)

26. Prior to their separation, both parties were fully involved in the child's day-to-day life and in providing for the child's needs.

27. After their separation, the parties continued to live in Zimbabwe, and the parties agreed to co-parent.

28. The parties never agreed that Petitioner could permanently remove L.M. to the United States.

29. No custody order was issued by any court prior to Petitioner absconding with L.M.

30. Petitioner has interfered with Respondent's right of access to his daughter since removing her wrongfully from Zimbabwe in late 2021.

31. As set forth in the Affidavit of Simon Gregory John Bull, counsel for Respondent: "In terms of the Common Law of Zimbabwe a child born or conceived during the marriage has the status of a legitimate child of his or her parents with all the consequences as to the parent's parental power, which include guardianship and custody over such minor child by his or her parents."  (Counsel Aff., ¶ 6.)   Further: "[T]he parties were sharing their joint custody of the minor child and neither party had applied for the sole custodianship of [L.M.] by the time of Victoria Moore wrongfully and clandestinely removing her from the custody of [Respondent] in December 2021[.]"  (Counsel Aff., ¶ 8.)

32. Thus, under operation of Zimbabwe law, Respondent had custodial rights over L.M. at the time that Petitioner absconded with her.

33. On April 21, 2022, Respondent filed an action for divorce and custody in the Zimbabwe court.  (Respondent's Aff. ¶ 24.)

34. On June 1, 2022, Petitioner filed for emergency temporary custody, divorce, sole legal parental rights and responsibilities, sole physical parental rights and responsibilities, child support, spousal maintenance, and other relief.  However, at that time, Petitioner had been residing in Vermont for less than six months and therefore did not satisfy the residency requirements for jurisdiction in Vermont.

35. On or about June 6, 2022, Respondent's counsel informed Petitioner by email that Respondent was initiating proceedings in Zimbabwe.  *See* Exhibit 4, p. 44-47.

36. The Vermont Superior Court issued a series of improper orders without subject matter jurisdiction, which further deprived Respondent of his rights.  After a period of time, the Vermont court dismissed the improperly filed action.  Petitioner then attempted to amend or re-file her untimely divorce/custody complaint, thus further confusing the Vermont Superior Court with improper and misleading filings, and muddying the state court docket.

37. In October 2022, Respondent submitted his initial application for return of L.M. under the Hague Convention to the Zimbabwe Central Authority.  *See* Exhibit 1 (Central Authority Letter dated October 24, 2022).

38. Respondent submitted his Hague Convention application to the Zimbabwe Central Authority less than a year after Petitioner absconded with L.M. to the United States.

9

39. On or about April 5, 2023, the United States Department of State issued a letter to the Vermont Superior Court, informing the court that an application for the return of L.M. had been filed by Respondent in Zimbabwe and had been subsequently received by the U.S. central authority.  *See* Exhibit 6 (Article 16 letter).

40. Subsequently, the Vermont Superior Court stayed the divorce/custody action, although a second motion to dismiss remains pending based on the uncurable lack of subject matter jurisdiction.  *See* Exhibit 7 (stay order).

41. Petitioner has filed papers in the Zimbabwe divorce/custody action through Zimbabwe counsel.  *See* Exhibit 8 (Zimbabwe order denying special plea, dated 25.8.2023).

42. The proper forum for resolution of custody and divorce is the Zimbabwe action, which was filed first in April 2022 and was the habitual residence and home state of L.M. at the time of the filing.

43. In this Counter-Petition, Respondent seeks the Court's ruling for a return of L.M. to Zimbabwe and right of access to L.M. while the Zimbabwe custody and divorce action remains pending, as permitted under the Hague Convention.

**COUNT I – WRONGFUL REMOVAL**

44. Respondent restates and realleges the foregoing paragraphs as if set forth fully herein.

45. The Hague Convention applies to cases in which a child under the age of 16 years has been removed or retained from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

46. The child, L.M., is under the age of 16.

47. The child's habitual residence is Zimbabwe and was Zimbabwe on the date when Petitioner removed the child from Zimbabwe.

48. From the totality of the circumstances perspective as of the date of removal, Zimbabwe was the child's home.

49. Zimbabwe has always been the child's ordinary home and holds a degree of settled purpose from the child's perspective.

50. The child is fully involved an integrated into all aspects of daily life in Zimbabwe.

51. At the time Petitioner removed the child from Zimbabwe, Respondent had and continues to have rights of custody to the child under Zimbabwe law by operation of law, as set forth in the Counsel Affidavit.

52. The court orders entered by the Vermont Superior Court were erroneous and entered without proper jurisdiction. Regardless, no court has entered a final order adjudicating custody of L.M. Under operation of Zimbabwe law, the parties each have custodial rights over L.M. at this time.

53. Joint parental rights are "rights of custody" under Article 5a of the Hague Convention.

54. Respondent has these rights by operation of law.

55. At the time Petitioner wrongfully removed the child from Zimbabwe, Respondent was exercising his rights of custody by caring for the child, participating in the child's life, and undertaking all parental rights, and he would have continued exercising those rights but for the wrongful removal.

56. Petitioner's removal of L.M. from Zimbabwe to the United States is therefore wrongful under the Hague Convention because Petitioner removed the child from her habitual residence in Zimbabwe, in breach of Respondent's rights of custody to the child under Zimbabwean law, which Respondent was exercising at the time of the removal.

57. Notice is given in this pleading that Respondent is relying upon foreign law.  *See* Fed. R. Civ. P. 44.1.

58. Respondent has requested the return of the child to Zimbabwe by submitting his Application for Return to the Central Authority of Zimbabwe.  See Exhibit 1.  In addition, Respondent submitted a request to the U.S. Department of State.  See Exhibit 5.

59. Respondent has never consented to the removal of the child from Zimbabwe.

60. Respondent has promptly and to the best of his ability taken all legal steps available to seek the return of the child to Zimbabwe and to ensure his rights of access to the child.

61. Counter-Respondents have provided material assistance and financial support, including but not limited to housing in New York and Vermont, to Petitioner to substantially assist the absconding of L.M. from Zimbabwe and the blocking of access of Respondent to his daughter.

62. Petitioner and Counter-Respondents are jointly and severally liable for the fees, costs, and expenses incurred by Respondent in seeking the return of his daughter.

63. The child is currently located within this District of Vermont.

12

## COUNT II – ARTICLE 18 RETURN

64. Respondent restates and realleges the foregoing paragraphs as if set forth fully herein.

65. Respondent invokes Article 18 of the Hague Convention, which grants this Court plenary power to order the child's return at any time.

## UCCJEA DECLARATION

66. The child is currently located with Petitioner within the jurisdiction of this Court.

67. From the time of the child's birth through December 18, 2021, the child has lived in Zimbabwe.  Until approximately September or October 2021, the parties lived together with the child in one home, and from approximately September or October 2021 until mid-December 2021, the child spent time at each parent's respective homes in Zimbabwe.

68. In December 2021, Petitioner wrongfully removed the child from Zimbabwe.

69. From December 2021 through at least January 2022, Petitioner and L.M. resided in New York at the home of Counter-Respondents.

70. On or about January 27, 2022, Petitioner informed Respondent that she intended to remain permanently in the United States.

71. On April 21, 2022, Respondent filed an action for custody and divorce in Zimbabwe.

72. On June 1, 2022, Petitioner filed an action for custody, divorce, and other remedies in the Vermont Superior Court, family division.  In that filing, Petitioner's UCCJEA statement averred that Petitioner had been residing in New York with her parents from December

2021 through March 2022, and then in Vermont from March 2022 through the date of filing.

73. From a date between January 2022 and March 2022 until the present or a recent date, Petitioner and L.M. have resided at the second home of Counter-Respondents in West Dover, Vermont.

74. Petitioner attempted to dismiss and refile her Vermont action after the court ruled that she had not established six months of residency in Vermont before filing her June 2022 action. On or about March 7, 2023, Respondent filed a motion to dismiss the improper second action, which motion remains stayed and pending.

### NOTICE OF HEARING

75. Pursuant to 22 U.S.C. § 9003(c), the parties will be given notice of any hearing in accordance with Vermont's UCCJEA and all applicable Federal Rules.

### ATTORNEY'S FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO THE HAGUE CONVENTION ARTICLE 26 AND ICARA § 9007

76. Respondent has incurred and will continue to incur reasonable and necessary attorney's fees, expenses, and costs as a result of the wrongful removal of the child by Petitioner, with the material assistance of Counter-Respondents.

77. Respondent respectfully requests that the Court award him all of his reasonable and necessary expenses and costs incurred in accordance with ICARA § 9007, upon the filing

14

of a separate motion for reasonable and necessary expenses and costs in accordance with ICARA, the Federal Rules, and this Court's local rules.

78. Petitioner and Counter-Respondents are jointly and severally liable for these costs, fees, and expenses.

**WHEREFORE**, Respondent respectfully requests the following relief:

A. That this Counter-Petition for Return of the Child to Zimbabwe be granted;

B. That this Court issue an Order directing Petitioner and Counter-Respondents, jointly and severally, to pay Respondent's reasonable and necessary attorney's fees and expenses, including but not limited to legal fees incurred in this action and the erroneously-filed Vermont Superior Court action, expenses, and other costs; and

C. That this Court grant any such further relief as justice may require.

## ANSWER TO "VERIFIED COMPLAINT AND PETITION FOR DECLARATORY JUDGMENT AND REQUEST FOR SPEEDY HEARING"

Respondent Daniel Moore hereby answers and responds to Petitioner Victoria Moore's "Verified Complaint and Petition for Declaratory Judgment and Request for Speedy Hearing" (Doc. 1), as follows:

1. Admitted that this action was filed by Petitioner.  Admitted that Petitioner is the mother of L.M.  Admitted that Petitioner is a citizen of the United States.  Admitted that Respondent

15

is a citizen of Zimbabwe.  Admitted that Respondent seeks to have L.M. returned to Zimbabwe.  The remainder of this paragraph is commentary to which no response is required; to the extent a response is required, denied.

2. Denied because Petitioner misstates the procedural timeline of the relevant actions. Respondent filed a divorce and custody action in Zimbabwe in or about April 2022, prior to Petitioner's initial filing in Vermont.  Respondent filed an initial application under the Hague Convention in or about October 2022 in Zimbabwe.

3. Denied because Petitioner misstates the procedural timeline of the relevant actions. Respondent filed a divorce and custody action in Zimbabwe in or about April 2022, prior to Petitioner's initial filing in Vermont.  Respondent filed an initial application under the Hague Convention in or about October 2022 in Zimbabwe.  The remainder of paragraph 3 is commentary to which no response is required; to the extent a response is required, denied.

4. This paragraph contains legal assertions to which no response is required.

5. This paragraph contains legal assertions to which no response is required.

6. Admitted that the Hague Convention gives this Court certain authority.  The remainder of the paragraph contains legal assertions to which no response is required; to the extent a response is required, denied.

7. This paragraph contains legal assertions to which no response is required; to the extent a response is required, admitted that this Court has jurisdiction over actions arising under the Hague Convention in relation to L.M. due to her location within the District of Vermont.

8. Admitted.

9. Admitted.

10. Admitted that the parties lived together as a married couple and admitted that they separated in or around September 2021.

11. Admitted that Respondent is employed as a hunting and safari guide and admitted that he works at times in Tanzania and Cameroon.  Denied as to the remainder of this paragraph.

12. Denied.

13. Admitted that Petitioner absconded with L.M. on or about December 17, 2021.  Denied as to the remainder of this paragraph.

14. Denied.

15. Denied.

16. Denied.

17. Admitted that Petitioner absconded with L.M. to New York in December 2021.  Denied that Petitioner became a permanent resident of Vermont on January 20, 2022.  Petitioner's UCCJEA statement in her initial Vermont Superior Court filing indicates that she did not move to Vermont until March 2022.

18. Denied.  Petitioner has blocked contact between Respondent and L.M.

19. Admitted that Petitioner filed an action in Vermont Superior Court on or about June 1, 2022.  Denied that Respondent attempted to evade service.

20. Admitted that service was purportedly made on "Harley Peacock."  Denied that this service was effective.

21. Admitted.  The Vermont Superior Court erroneously entered an interim order for parental rights despite lacking jurisdiction.

22. Admitted that Petitioner's filing was dismissed due to insufficient residency in Vermont. Admitted that the Vermont Superior Court issued numerous conflicting and erroneous orders.   Denied that Respondent filed a divorce action *after* Petitioner's filings. Respondent filed his action in Zimbabwe first, on April 21, 2022.  Admitted that no custody order has yet been issued by the Zimbabwe court.

23. Denied.  Respondent filed an application in Zimbabwe under the Hague Convention in or about October 2022.

24. Admitted.

25. Denied that Respondent's divorce action was "concurrently filed."  Respondent filed first in Zimbabwe, on April 21, 2022.  Admitted that the Zimbabwe divorce/custody action has not been stayed.  The remainder of the paragraph is denied.

26. This paragraph contains legal assertions to which no response is required; to the extent a response is required, denied.

27. This paragraph contains legal assertions to which no response is required; to the extent a response is required, denied.

28. Denied.

29. This paragraph contains legal assertions to which no response is required; to the extent a response is required, denied.

30. This paragraph contains legal assertions to which no response is required; to the extent a response is required, denied.

31. This paragraph contains legal assertions to which no response is required; to the extent a response is required, denied.

32. This paragraph contains legal assertions to which no response is required.  Admitted that L.M. habitually resided in Zimbabwe at the time of her removal.  Admitted that L.M. is under the age of sixteen.  Admitted that no court in Zimbabwe had issued a custody order. Denied that Zimbabwean law presumes to award custody to Petitioner.  The remainder of the paragraph is denied.  Respondent continually exercised his custodial rights over L.M. and would have continued to do so, but for the wrongful removal of L.M. by Petitioner.

33. Denied.

34. This paragraph contains legal assertions to which no response is required; to the extent a response is required, denied.

35. This paragraph contains legal assertions to which no response is required; to the extent a response is required, denied.

**WHEREFORE**, Respondent Daniel Moore respectfully requests that the Court grant his Counter-Petition as set forth above and deny Petitioner's "Verified Complaint and Petition for Declaratory Judgment and Request for Speedy Hearing," with attorney's fees, costs, and expenses awarded to Respondent.

Dated: August 31, 2023

Respectfully Submitted,


*/s/ Katherine Burghardt Kramer*____
Katherine Burghardt Kramer
DGW Kramer LLP
One Rockefeller Plaza, Suite 1060
New York, NY 10020
T: (917) 688-2585
kkramer@dgwllp.com
*Attorney for Respondent Daniel Moore*